UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*Electronically Filed*

| | |
|---|---|
| U.B. THOMAS III ) | |
| ) | |
| Plaintiff ) | Case No. 3:18-cv-41-DJH |
| ) | |
| v. ) | |
| ) | |
| LOUISVILLE METRO ) | |
| GOVERNMENT ) | |
| ) | |
| Serve: The Honorable Greg Fischer, ) | |
|     Mayor ) | |
|     Louisville Metro Government ) | |
|     527 W. Jefferson Street ) | |
|     4th Floor ) | |
|     Louisville, Kentucky 40202 ) | |
| ) | |
| GREGORY FREDERICK ) | |
| ) | |
| Serve: 1135 West Jefferson ) | |
|     Louisville, KY 40203 ) | |
| ) | |
| WILLIAM BOWMAN ) | |
| ) | |
| Serve: 1135 West Jefferson ) | |
|     Louisville, KY 40203 ) | |
| ) | |
| BRIAN MEURER ) | |
| ) | |
| Serve: 1135 West Jefferson ) | |
|     Louisville, KY 40203 ) | |
| ) | |
| HENRY OTT ) | |
| ) | |
| Serve: 1135 West Jefferson ) | |
|     Louisville, KY 40203 ) | |

| | |
|---|---|
| JOHN GRIFFITH | ) |
| | ) |
| Serve: 1135 West Jefferson | ) |
| Louisville, KY 40203 | ) |
| | ) |
| TODD LEONARD | ) |
| | ) |
| Serve: 1135 West Jefferson | ) |
| Louisville, KY 40203 | ) |
| | ) |
| SHAWN ABMA | ) |
| | ) |
| Serve: 1135 West Jefferson | ) |
| Louisville, KY 40203 | ) |
| | ) |
| JASON SANDERS | ) |
| | ) |
| Serve: 1135 West Jefferson | ) |
| Louisville, KY 40203 | ) |
| | ) |
| Defendants | ) |

************

# COMPLAINT

## PRELIMINARY STATEMENT

1. Even though Defendants knew U.B. Thomas III was an alcoholic and drug addict, they provided him alcohol and permitted him access to pain pills to coerce him to confess falsely to several arsons. Defendants then suppressed material evidence that Thomas could have used at trial to defend himself. Due to Defendants' unconstitutional conduct, a jury sentenced Thomas to 20 years in prison. After serving eight years in prison, a Jefferson County judge vacated Thomas' convictions. Thomas seeks damages caused by Defendants' conduct

pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and Kentucky common law.

## PARTIES AND JURISDICTION

2.  U.B. Thomas III is a resident of the Commonwealth of Kentucky.

3.  At all times relevant to this Complaint, Defendant Louisville Metro Government was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all Louisville Fire Department officers, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors.

4.  At all times relevant to this Complaint, Defendant Gregory Frederick was Fire Chief for Louisville Metro Government.  He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors.  Further, he was responsible for the protection of the constitutional rights of LFD interview subjects.  He is sued in his individual capacity.

5.  At all times relevant to this Complaint, Defendant William Bowman was Fire Marshal for Louisville Metro Government.  He was responsible for the establishment of policies and procedures, either formally or by custom, regarding

the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors. Further, he was responsible for the protection of the constitutional rights of LFD interview subjects. He is sued in his individual capacity.

6.     At all times relevant to this Complaint, Defendant Brian Meurer was Fire Marshal for Louisville Metro Government. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors. Further, he was responsible for the protection of the constitutional rights of LFD interview subjects. He is sued in his individual capacity.

7.     At all times relevant to this Complaint, Defendant Henry Ott was a Major at Louisville Fire Department. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all LFD officers, employees, and independent contractors. Further, he was responsible for the protection of the constitutional

rights of LFD interview subjects. He personally and directly participated in Thomas' mistreatment. He is sued in his individual capacity.

8. At all times relevant to this Complaint, Defendant John Griffith was a Sergeant at Louisville Fire Department. He was responsible for the protection of the constitutional rights of LFD interview subjects. He personally and directly participated in Thomas' mistreatment. He is sued in his individual capacity.

9. At all times relevant to this Complaint, Defendant Todd Leonard was a Sergeant at Louisville Fire Department. He was responsible for the protection of the constitutional rights of LFD interview subjects. He personally and directly participated in Thomas' mistreatment. He is sued in his individual capacity.

10. At all times relevant to this Complaint, Defendant Shawn Abma was a Sergeant at Louisville Fire Department. He was responsible for the protection of the constitutional rights of LFD interview subjects. He personally and directly participated in Thomas' mistreatment. He is sued in his individual capacity.

11. At all times relevant to this Complaint, Defendant Jason Sanders was a Sergeant at Louisville Fire Department. He was responsible for the protection of the constitutional rights of LFD interview subjects. He personally and directly participated in Thomas' mistreatment. He is sued in his individual capacity.

12. This Court has subject matter jurisdiction over this action and venue is proper. Plaintiff's claims involve an amount more than the jurisdictional limit of this Court and a substantial amount of the conduct giving rise to this matter occurred in this judicial District.

## FACTUAL ALLEGATIONS

13. In 2009, U.B. Thomas III was in a relationship with Colleen Compton. Thomas lived with Compton in a house she rented at 2506 Rowan Street in Louisville, Kentucky.

14. Shane McCain owned that house, along with others in the area. McCain ran a scam in which tenants paid him for rent and utilities but he did not pay the utility providers. When the utility provider disconnected service, McCain moved the tenant to another house he owned and started new utility service there.

15. After McCain's failure to pay the electricity bill, LG&E disconnected service at the Rowan Street house. McCain responded by moving Compton to 1798 Hill Street.

16. In the early morning on May 3, 2009, fires started at that Hill Street house, the Rowan Street house, and two other houses McCain owned.

17. Louisville Fire Department arson investigators Henry Ott, John Griffith, and Todd Leonard responded to the various fires.

18. At the Rowan Street house, Ott and Leonard saw Thomas and spoke with him. When they spoke, Thomas was carrying a bottle of alcohol. The investigators asked Thomas where he was coming from and Thomas told them he had been at a liquor store where he purchased the bottle he was carrying. The investigators further asked him to detail his whereabouts that night. Thomas replied that he'd been up for three days drinking and doing drugs to celebrate Kentucky Derby weekend. The investigators acknowledged they could smell alcohol

on him.  They then decided not to question Thomas because he was under the influence.

19.     Based on witness tips, LFD investigators arrested Andre Sloss. Witnesses saw Sloss coming out of the Hill Street house with a basket that was on fire.  After his arrest, Sloss implicated Thomas in the fires.

20.     Armed only with Sloss' blame and no evidence implicating Thomas, LFD investigators zeroed in on Thomas as their prime suspect.

21.     After the fires, the Red Cross arranged for Compton and Thomas to stay in a hotel room on Arthur Street.

22.     On May 7, 2009, LFD investigators devised a strategy to ensnare Thomas.  Their plan was to pick up Compton and Thomas separately and try to get Compton to implicate Thomas.  Griffith, Leonard, Abma, and investigator Yates went to the hotel to monitor it for Compton or Thomas.  Ott and investigator Jason Sanders roved around the Rowan Street area.

23.     Around 9:00 a.m., Ott and Sanders found Compton.  They could tell she was already intoxicated.  She told them she did not want to talk and that she was on her way to a liquor store.  When they continued to ask her to come with them to talk about the fires, she refused unless they would buy her alcohol.  Ott and Sanders drove Compton to a liquor store where they purchased her a 40-ounce bottle of malt liquor, from which she sipped in the backseat of their vehicle on the way to their office.

24. Ott and Sanders interviewed Compton even though they knew she was under the influence of alcohol and crack cocaine. During the interview, she did not implicate Thomas regarding the fires. However, she was visibly upset and vulnerable. The investigators recorded the entirety of Compton's interview. Around 11:00 a.m., after Ott and Sanders finished interviewing Compton, they drove her back to Rowan Street.

25. Near the time that Ott and Sanders returned Compton to Rowan Street, Leonard and Abma knocked on the door to the hotel room where they believed Thomas was. Thomas answered the door and got back in bed. He was visibly sleepy. Leonard and Abma told Thomas it was time to check out and they wanted him to come to their office to talk to them. Thomas finished drinking a beer he started the night before. Then he gathered items, including a container of Lortabs and Valiums in a red duffel bag, and got in Leonard and Abma's vehicle.

26. Thomas carried the red duffel bag into the interview room, where Leonard and Griffith questioned him for approximately two hours without recording the interview.

27. Each time investigators exited the room to discuss matters outside of Thomas' presence, he reached into his duffel bag and retrieved and ingested some of the narcotic pain pills he kept there.

28. Thomas denied involvement in setting the fires.

29. Going into Thomas' interview, Ott knew they had no evidence implicating Thomas and that they needed a confession.

8

30. After Thomas' continued denials, Ott entered the interview room with a computer and showed Thomas a portion of Compton's interview. Thomas recognized that Compton was drunk and high. Her mental and emotional condition caused Thomas to cry. Ott told Thomas he could help Thomas get out of the arson office so he could take care of Compton.

31. Ott explained to Thomas that investigators bought Compton alcohol earlier that morning. He then told Thomas he had something for him too. Despite their knowledge that Thomas was an alcoholic and drug addict, they provided him with a 40-ounce bottle of Olde English malt liquor.

32. After Thomas drank the malt liquor and ingested the narcotic pain medication, he gave false statements implicating himself in setting the fires.

33. After Thomas made those false statements, the investigators asked Thomas to sign a form indicating they advised him of his *Miranda* rights. Then, they started recording him and coerced Thomas to repeat his false inculpatory statements.

34. After coercing him to make false statements, the investigators advised Thomas that they were not going to lock him up and throw away the key. Instead, they were going to get him anger management and drug counseling so he could take care of Compton. Then, they brought him pizza to eat.

35. The investigators ultimately took Thomas to Louisville Metro Department of Corrections, where he was placed immediately in a detox cell and watched for signs of detox.

9

36. On June 15, 2009, based on information provided to prosecutors by the investigators, a grand jury indicted Thomas on multiple charges related to the May 3, 2009 fires.

37. On August 30, 2009, Thomas wrote to the trial court in his criminal case regarding the investigators' conduct in providing him alcohol and permitting him to access narcotics. Thomas also wrote to news media and Louisville officials.

38. Because of Thomas' letters, the Louisville Metro Police Department Public Integrity Unit initiated an investigation.

39. On December 7, 2009, PIU investigator Travis Hatchell confirmed at a suppression hearing the existence of the PIU investigation.

40. Over December 9 and 10, 2009, PIU investigators interviewed Ott, Abma, Sanders, Griffith, and Leonard.

41. Thomas' trial began on August 30, 2010 and, on September 2, 2010, a jury convicted him of multiple charges, but on lesser included offenses for nearly every charge.

42. Even though the investigators' PIU interviews contained statements that could have been used to impeach their testimony at trial, Defendants suppressed that evidence until Thomas' trial concluded.

43. Defendants withheld from prosecutors and Thomas' defense how they obtained a statement from Compton, that they selectively recorded their interrogation of Thomas, and that they coerced Thomas' inculpatory statements.

44. On March 3, 2017, the Jefferson Circuit Court, Division 6, Honorable Judge Olu Stevens granted Thomas' motion under Kentucky Rule of Criminal Procedure 11.42, found that Thomas' counsel was ineffective, and vacated Thomas' convictions.

45. Ott, Griffith, Leonard, Abma, and Sanders acted in accordance with their training by Louisville Metro Government, Frederick, Bowman, Meurer, and Ott.

46. Louisville Metro Government, Frederick, Bowman, Meurer, and Ott were aware that Ott, Griffith, Leonard, Abma, and Sanders used unconstitutional techniques to coerce confessions and intentionally chose not to intervene.

47. Louisville Metro Government, Frederick, Bowman, Meurer, and Ott were aware that Ott, Griffith, Leonard, Abma, and Sanders used alcohol to coerce confessions and intentionally chose not to intervene.

48. Because of Defendants' conduct described above, Thomas has been damaged in an amount to be determined at trial.

**COUNT 1:**
**FOURTH/FOURTEENTH AMENDMENT – MALICIOUS PROSECUTION –**
**42 U.S.C. § 1983**
**(DEFENDANTS OTT, GRIFFITH, LEONARD, ABMA, AND SANDERS)**

49. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

50. Ott, Griffith, Leonard, Abma, and Sanders acted under color of state law.

51. A criminal prosecution was initiated against Thomas and one or more

11

of Ott, Griffith, Leonard, Abma, and Sanders made, influenced, or participated in the decision to prosecute.

52. There was a lack of probable cause for the criminal prosecution.

53. Because of a legal proceeding, Thomas suffered a deprivation of liberty, apart from the initial seizure.

54. The criminal proceeding resolved in Thomas' favor.

55. Regardless of the criminal proceeding's resolution, Thomas was not guilty of any charged or lesser included offenses.

56. The acts of one or more of Ott, Griffith, Leonard, Abma, and Sanders caused Thomas damage.

57. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

### COUNT 2:
### FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983
### (ALL DEFENDANTS)

58. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

59. Defendants acted under color of state law.

60. One or more defendant suppressed material evidence that was favorable to Thomas.

61. The evidence one or more defendant suppressed was exculpatory or impeaching.

12

62. Had the evidence one or more defendant suppressed been disclosed, the result of the criminal proceedings against Thomas would have been different.

63. In the absence of the suppressed evidence, Thomas did not receive a fair trial.

64. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

### COUNT 3:
### FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS – 42 U.S.C. § 1983
### (ALL DEFENDANTS)

65. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

66. Defendants acted under color of state law.

67. Defendants' conduct was so oppressive that it shocks the conscience.

68. Defendants' conduct was intended to injure Thomas in a way unjustifiable by any government interest.

69. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

### COUNT 4:
### FIFTH AMENDMENT – 42 U.S.C. § 1983
### (DEFENDANTS OTT, GRIFFITH, LEONARD, ABMA, AND SANDERS)

70. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

71. Ott, Griffith, Leonard, Abma, and Sanders acted under color of state law.

72. One or more of Ott, Griffith, Leonard, Abma, and Sanders coerced Thomas to makes statements falsely incriminating him.

73. The coerced statements were used against Thomas in a criminal proceeding.

74. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

### COUNT 5:
### FOURTH AMENDMENT/FOURTEENTH AMENDMENT – SUPERVISORY LIABILITY – 42 U.S.C. § 1983
### (DEFENDANTS FREDERICK, BOWMAN, MEURER, AND OTT)

75. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

76. One or more of Defendants Frederick, Bowman, Meurer, and Ott violated Thomas' Fourth Amendment or Fourteenth Amendment rights.

77. One or more of Defendants Frederick, Bowman, Meurer, and Ott encouraged the unconstitutional conduct of one or more of Defendants Bowman, Meurer, Ott, Griffith, Leonard, Abma, and Sanders in that they officially authorized, approved, or knowingly went along with the unconstitutional conduct of one or more of Defendants Bowman, Meurer, Ott, Griffith, Leonard, Abma, and Sanders.

78. One or more of Defendants Frederick, Bowman, Meurer, and Ott set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which one or more knew or reasonably should have known would cause others to inflict constitutional injury.

79. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## COUNT 6:
## FOURTH AMENDMENT/FOURTEENTH AMENDMENT – *MONELL* LIABILITY – 42 U.S.C. § 1983
### (DEFENDANTS LOUISVILLE METRO GOVERNMENT AND FREDERICK)

80. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

81. Defendant Louisville Metro Government's and Defendant Frederick's respective training programs were inadequate to train their employees to carry out their duties.

82. Defendants Louisville Metro Government, Frederick, or both failed to adequately supervise or discipline their employees.

83. Defendant Louisville Metro Government's and Defendant Frederick's respective failures to adequately train, supervise, or discipline their employees amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the right to be free from providing false statements, to a fair trial free of fabricated evidence, and to obtain disclosed material evidence.

84. Defendant Louisville Metro Government's and Defendant Frederick's respective failures to adequately train, supervise, or discipline their employees proximately caused the violation of Thomas' right to be free from providing false statements, to a fair trial free of fabricated evidence, and to obtain disclosed material evidence.

85. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## COUNT 7:
## MALICIOUS PROSECUTION
### (DEFENDANTS OTT, GRIFFITH, LEONARD, ABMA, AND SANDERS)

86. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

87. One or more of Ott, Griffith, Leonard, Abma, and Sanders initiated, continued, or procured a criminal proceeding against the plaintiff.

88. One or more of Ott, Griffith, Leonard, Abma, and Sanders acted without probable cause.

89. One or more of Ott, Griffith, Leonard, Abma, and Sanders acted with malice, because he sought to achieve a purpose other than bringing an offender to justice.

90. The proceeding terminated in Thomas' favor.

91. The actions of one or more of Ott, Griffith, Leonard, Abma, and Sanders, and the subsequent proceeding, caused Thomas damage.

16

92. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action.

### COUNT 8:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

93. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

94. Defendants' conduct was extreme and outrageous.

95. Defendants' extreme and outrageous conduct intentionally or recklessly caused Thomas severe emotional distress.

96. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action.

### COUNT 9:
### NEGLIGENCE
### (ALL DEFENDANTS)

97. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

98. It was Defendants' duty to exercise ordinary care for the safety of other persons, including Thomas, to avoid foreseeable injuries.

99. Defendants knew or should have known Thomas was at risk of injury.

100. Defendants' breach of their duty was a substantial factor in causing Thomas' injuries.

101. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action.

## COUNT 10:
## RESPONDEAT SUPERIOR
## (DEFENDANT LOUISVILLE METRO GOVERMENT)

102. Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

103. One or more of the individual defendants' actions were the proximate cause of Thomas' injuries.

104. One or more of the individual defendants' actions acted within the course and scope of his employment with Louisville Metro Government

105. In addition to compensatory damages, interest, expenses, and court costs, Thomas is entitled to punitive damages and an award of attorney fees in prosecuting this action.

## PRAYER FOR RELIEF

Accordingly, U.B. Thomas III requests that the Court grant the following relief:

1. Judgment in his favor against Defendants and an award of monetary damages, including punitive damages, for Defendants' unlawful actions;

2. An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 1988;

3. Trial by jury; and

4.  All other relief to which Thomas may be entitled.


Respectfully submitted,

CRAIG HENRY PLC
Aaron Bentley
Michele Henry


/s/ Aaron Bentley
239 South Fifth Street, Suite 1400
Louisville, Kentucky 40202
Telephone: (502) 614-5962
Facsimile:  (502) 614-5968
abentley@craighenrylaw.com
mhenry@craighenrylaw.com

*Counsel for Plaintiff U.B. Thomas III*