UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| U.B. THOMAS, III | Plaintiff |
| v. | Civil Action No. 3:18-cv-00041-RGJ |
| LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT, ET AL. | Defendants |

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff U.B. Thomas, III brings this suit against Defendants Louisville-Jefferson County Metro Government ("Louisville Metro") and Louisville Fire Department ("LFD") officials Gregory Frederick, William Bowman, Brian Meurer, Henry Ott, John Griffith, Todd Leonard, Shawn Abma, and Jason Sanders asserting claims under 42 U.S.C. § 1983 and Kentucky common law. [DE 1, Compl.]. Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). [DE 4]. Briefing is complete, and the Motion is ripe. [*See* DE 7, Response; DE 8, Reply]. For the reasons below, the Court **GRANTS** Defendants' Motion.

### BACKGROUND

The Court accepts the facts in the Complaint as true for the present Motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

In 2009, Thomas and his girlfriend, Colleen Compton, rented a house owned by Shane McCain in Louisville, Kentucky. [DE 1 at ¶¶ 13–14]. Fires occurred at Thomas's residence and three other houses owned by McCain. *Id.* at ¶ 16. The LFD investigated the fires and assigned investigators Abma, Griffith, Leonard, Ott, and Sanders to the matter. *Id.* at ¶ 17.

1

Acting on a tip, the investigators believed that Thomas was partially responsible for setting the fires. *Id.* at ¶ 18. The investigators located Compton and induced her to participate in questioning by buying her alcohol. *Id.* at ¶ 23. The investigators interviewed Compton despite knowing that she was under the influence of alcohol and drugs. *Id.* at ¶ 24. Compton did not implicate Thomas in the fires. *Id.*

The investigators brought Thomas to an LFD station for questioning. *Id.* at ¶ 25. To induce Thomas to participate in questioning, the investigators bought Thomas alcohol and showed him a recording of Compton's interview, in which Compton appeared intoxicated and upset. *Id.* at ¶ 30. Each time the investigators left the interview room, Thomas ingested narcotics pills that he had brought with him. *Id.* at ¶ 27. During questioning, Thomas implicated himself in the fires. *Id.* at ¶ 32. The investigators asked Thomas to sign a *Miranda* waiver and began video recording the interview. *Id.* at ¶ 33. Thomas alleges that the investigators "coerced [him] to repeat his false inculpatory statements." *Id.*

A grand jury indicted Thomas for his alleged involvement in the fires. *Id.* at ¶ 36. Two months later, Thomas wrote to the trial court and local news media about the investigators' conduct during his interrogation. *Id.* at ¶ 37. The Louisville Metro Police Department's Public Integrity Unit ("PIU") began an inquiry and interviewed the investigators as part of the PIU inquiry. *Id.* at ¶¶ 38, 40.

In August 2010, Thomas's trial began. *Id.* at ¶ 41. A jury convicted Thomas of several charges. *Id.* While Thomas was serving his sentence, a state-court judge granted Thomas's motion asserting ineffective assistance of counsel under Kentucky Rule of Criminal Procedure 11.42 and vacated Thomas's convictions. *Id.* at ¶ 44. The Commonwealth has appealed that ruling. [DE 4-1, Mem. Supp. Mot. Dismiss at 46].

Thomas then brought this action against investigators Abma, Griffith, Leonard, Ott, and Sanders. [DE 1]. Thomas also sued Louisville Metro, LFD Fire Chief Gregory Frederick, and LFD Fire Marshals William Bowman and Brian Meurer. *Id.* In his Complaint, Thomas asserts claims for relief under 42 U.S.C. § 1983 and Kentucky common law. *Id.* at ¶¶ 49–105. Defendants now move to dismiss Thomas's complaint. [DE 4].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett*, 561 F.3d at 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## DISCUSSION

### A. Fourth Amendment Malicious Prosecution

In Count 1 of his Complaint, Thomas asserts a Fourth Amendment malicious-prosecution claim against Abma, Griffith, Leonard, Ott, and Sanders. [DE 1 at ¶¶ 49–57]. Fourth Amendment malicious prosecution consists of four elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure, and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alteration in original) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017), *vacated on other grounds*, 138 S.Ct. 640 (2018)).

In their Motion to Dismiss, Defendants argue that because the state-court action is on appeal, the criminal proceeding has not terminated in Thomas's favor. [DE 4-1 at 48]. Defendants contend that Thomas's malicious-prosecution claim has therefore not accrued and must be dismissed for lack of ripeness. *Id.* The Sixth Circuit has held that malicious-prosecution claims accrue upon the "termination of the criminal proceeding in favor of the accused." *King*, 852 F.3d at 579 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (alteration omitted)). For purposes of accrual, "termination" does not occur where an appellate court sets aside a person's conviction and remands the matter to trial court for further proceedings. *Id.*; *see also Jordan v. Blount Cty.*, 885 F.3d 413, 415 (6th Cir. 2018). In that situation, the criminal proceeding has not ended because the accused could still be found guilty at trial. *Jordan*, 885 F.3d at 415. The Sixth Circuit has not

4

addressed whether an action has "terminated" when, as here, a defendant's conviction is dismissed at the trial-court level and the government seeks an appeal reinstating the conviction. At least one other court has acknowledged the lack of settled law on this issue. *See Stapinski v. Materson*, No. 16 C 9155, 2017 WL 497772, at *3 (N.D. Ill. Feb. 7, 2017) ("The parties have not cited, and the Court has not found, any case law analyzing the accrual date for a malicious prosecution claim when a defendant's indictment is dismissed and the State continues to prosecute by seeking reinstatement of the indictment on appeal.").

Given the Sixth Circuit's holdings in *King* and *Jordan*, the Court finds that Thomas's malicious-prosecution claim has not accrued. Under *King* and *Jordan*, the Court must ask whether the criminal proceeding has "in fact ended." *Jordan*, 885 F.3d at 415. In the criminal matter against Thomas, the Commonwealth has appealed the trial court's decision to vacate Thomas's conviction. [DE 4-1 at 46]. It is thus possible that the appellate court may eventually rule in the Commonwealth's favor and reinstate Thomas's conviction. *See, e.g.*, *Commonwealth v. Foley*, No. 2006-CA-000812-MR, 2007 WL 1378480 (Ky. Ct. App. May 11, 2007) (overturning the trial court's finding of ineffective assistance of counsel and reinstating the defendant's conviction). Much like when an individual's conviction is overturned on appeal and remanded to the trial court, a matter cannot be said to have reached a final termination when a trial court has vacated an individual's conviction, but the prosecution has appealed. Put simply, the matter is still ongoing. *See Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007) ("[M]alicious prosecution requires *final* adjudication in favor of the accused." (emphasis added)).

Allowing Thomas to proceed with his malicious-prosecution claim would risk implying the invalidity of Thomas's conviction if his conviction is ultimately reinstated. *See Heck*, 512 U.S. at 487 (1994). The few courts that have addressed this issue have ruled similarly. *See Stanley v.*

5

*Sawh*, No. H–13–3284, 2014 WL 4659476, at *2 (S.D. Tex. Sept. 17, 2014) ("[A]llowing a malicious prosecution claim, while litigation is still pending, would unnecessarily increase the cost of litigation because it would allow the plaintiff to prosecute a claim only to have it rendered meaningless if later all or part of the appeal of the underlying action is decided adversely." (internal quotation marks and citation omitted)); *Dains v. Maricopa Cty.*, No. 2:07-cv-2606-HRH, 2008 WL 11338893, at *4 (D. Ariz. June 12, 2008) ("If the trial court is reversed on appeal, it is reasonable to assume that the state will retry plaintiffs. As long as plaintiffs face the possibility of retrial, the criminal case cannot be considered terminated."); *see also* Eric G. Mayer and Sally J.T. Necheles, 54 C.J.S., Malicious Prosecution § 63 ("A malicious prosecution action cannot be maintained while the underlying action is pending on appeal.").

Accordingly, the Court finds that Thomas's Fourth Amendment malicious-prosecution claim has not accrued. The Court will therefore dismiss the claim without prejudice.

**B.     Fourteenth Amendment Malicious Prosecution**

In Count 1 of his Complaint, Thomas also asserts a Fourteenth Amendment malicious-prosecution claim. [DE 1 at ¶¶ 59–57]. Defendants argue that Thomas's claim fails because the Sixth Circuit does not recognize malicious-prosecution claims under the Fourteenth Amendment. [DE 4-1 at 47]. Indeed, the Sixth Circuit has held that "traditional claims for 'malicious prosecution' [must] be pursued and treated as Fourth Amendment violations when the gravamen of the complaint is continued detention without probable case." *Gregory v. City of Louisville*, 444 F.3d 725, 748 (6th Cir. 2006). However, the Sixth Circuit has not addressed whether an individual may assert a malicious-prosecution claim under the Fourteenth Amendment where the core of his complaint "allege[s] an injury distinct from Fourth Amendment protections." *Gregory*, 444 F.3d at 748 n.10; *see also Mishak v. Serazin*, No: 1:17CV1543, 2018 WL 1377815, at *8 (N.D. Ohio

Mar. 19, 2018) (finding that the Sixth Circuit has not addressed whether a plaintiff may assert a Fourteenth Amendment malicious-prosecution claim where he alleges injuries beyond those typical of a Fourth Amendment violation).

Thomas does not argue that the Sixth Circuit would apply a different standard to Fourteenth Amendment malicious-prosecution claims than the standard the court applies to Fourth Amendment malicious-prosecution claims. [*See* DE 7]. Sister circuits have explicitly held that "the elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment." *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013); *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007) (under either a Fourth or Fourteenth Amendment malicious-prosecution claim, the plaintiff must show that the original action terminated in his favor). And the Sixth Circuit has suggested that a federal malicious-prosecution claim accrues upon favorable termination in the underlying proceeding, regardless of the constitutional amendment under which a plaintiff pleads the claim. *See Dunn v. State of Tenn.*, 697 F.2d 121, 127 (6th Cir. 1982) (". . . this Court finds that the favorable termination of the prior criminal proceeding marks the point at which a 1983 claim for malicious prosecution accrues.").

Thus, even if the Court were to recognize a Fourteenth Amendment malicious-prosecution claim, the claim would still not accrue until the criminal proceeding against Thomas terminated. *See King*, 852 F.3d at 579. As explained above, the underlying criminal proceeding has not terminated. Thomas's Fourteenth Amendment malicious-prosecution claim is therefore not ripe, and the Court will dismiss the claim without prejudice.

## C. Fourteenth Amendment *Brady* Violation

In Count 2 of his Complaint, Thomas alleges that Defendants suppressed exculpatory evidence at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). [DE 1 at ¶¶ 58–64]. The allegedly exculpatory evidence at issue is (1) that the investigators coerced a statement from Compton, (2) that the investigators selectively recorded Thomas's interrogation and coerced his confession, and (3) the interviews of the investigators conducted by the PIU inquiry. *Id.* at ¶¶ 42–43. To establish a *Brady* violation, Thomas must allege that "[t]he evidence at issue [was] favorable to the accused, either because it [was] exculpatory, or because it [was] impeaching; that evidence [was] suppressed by the State, either willfully or inadvertently; and prejudice [] ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Even if Thomas has adequately alleged each element, "there is no *Brady* violation 'if the defendant knew or should have known the essential facts permitting him to take advantage of the information . . . or if the information was available to him from another source.'" *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (quoting *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)).

Defendants argue that Thomas's *Brady* claim fails because it is clear from the face of Thomas's Complaint that he knew the essential facts regarding the evidence at issue. [DE 4-1 at 49–50]. It is undisputed that Thomas knew Compton was "drunk and high" when she gave her statement to investigators. [DE 1 at ¶¶ 30–31]. Thomas was aware of his own intoxication during his confession and that investigators aided in the intoxication. *Id.* at ¶¶ 31–32. Thomas also knew that a PIU investigation had been initiated regarding his confession. *Id.* at ¶¶ 38–39. But Thomas maintains that while he knew some facts about the evidence, he was unaware of enough details to take use the information at trial. [DE 7 at 78]. Thomas argues that he was unaware that the investigators provided Compton with alcohol, that Defendants "selectively recorded his

interrogation but recorded the entirety of Compton's interview," and that the PIU inquiry had interviewed LPD investigators. *Id.*

The dispute thus centers on what constitutes an "essential fact" under *Brady*. Although the Sixth Circuit has not explicitly defined "essential fact," several cases are instructive. In *United States v. Todd*, the court held that a defendant may know the "essential facts" permitting him to take advantage of evidence even where he has no knowledge of the evidence at issue. 920 F.2d 399, 405 (6th Cir. 1990); *see also Vaughan v. City of Shaker Heights*, No. 1:10 CV 00609, 2015 WL 1650202, at *6 (N.D. Ohio Apr. 14, 2015) ("The Court is not persuaded that [Sixth Circuit] case[law] stand[s] for the idea that in order to 'know the essential facts,' the plaintiff must necessarily know that the exculpatory information actually exists."). A defendant also possesses the "essential facts" when there was a reasonable strategy available to him at trial that could have brought the exculpatory evidence to light. *See Benge v. Johnson*, 474 F.3d 236, 243 (6th Cir. 2007) ("If [the defendant] believed that [the witness] was lying . . . [he] could have called [another witness] to testify about the night in question and thus contradict [the initial witness]."); *Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) ("A reasonable defendant would have pursued that inquiry . . . but [the defendant] did not do so.").

Based on the above authority, Thomas knew the "essential facts" permitting him to take advantage of the allegedly suppressed evidence. First, Thomas admits that before his interrogation, "Ott explained to [him] that [the] investigators [had] bought Compton alcohol earlier that morning." [DE 1 at ¶ 31]. Thus, despite the suggestion in Thomas's Response, Thomas was aware of the essential facts permitting him to challenge Compton's statement at trial. Thomas cannot maintain a *Brady* claim regarding Compton's interview when a "reasonable defendant" in

9

Thomas's position would have challenged the interview based on the knowledge that the investigators had bought Compton alcohol. *See Spirko*, 368 F.3d at 611.

Second, because Thomas was aware of the circumstances of his own confession, he knew of the essential facts permitting him to challenge his statements at trial. Thomas knew that the investigators bought him alcohol, that he took narcotics pills during the interview, and that he signed a *Miranda* form after his first confession. [DE 1 at ¶¶ 25–35]. In other words, "[Thomas] already knew of his own contact with the police at the time of trial, so the prosecution's failure to provide this information was not a *Brady* violation." *Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011); *see also Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 WL 542415, at *7 (N.D. Ohio Feb. 10, 2015) ("[Plaintiff] knew herself what occurred during the interrogation, and the police were under no obligation to tell her again that they coerced her into confessing." (quoting *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006) (alternation in original))); *Boyd v. Jones*, No. 04-CV-74462-DT, 2006 WL 1556207, at *8 (E.D. Mich. June 5, 2006) ("Petitioner was present during the police interrogations and would have been aware of any alleged coercion on the detectives' part in attempting to induce a confession. The failure to turn over any police notes concerning the circumstances surrounding petitioner's interrogation would not constitute a *Brady* violation.").

Similarly, even if Thomas did not know that the investigators selectively recorded the interview, Thomas still knew the essential facts about his confession such that he could have challenged it at trial. For example, Thomas's counsel could have requested a hearing about the *Miranda* waiver and the recording to address when the recording started and when Thomas signed the waiver form. *See generally Jamison v. Collins*, 100 F. Supp. 2d 521, 568 (S.D. Ohio 1998) ("Petitioner did know the essential facts surrounding the claim. For instance, he would have

known of the existence of the Waiver Form, whether he had signed the form, and whether he had orally waived his *Miranda* rights during the interrogation in question, despite his refusal to sign the Waiver Form."). Because Thomas could have pursued a strategy that would have brought the allegedly exculpatory evidence to light, Thomas cannot maintain a *Brady* claim as to the evidence regarding his confession. *See Benge*, 474 F.3d at 243.

Finally, Thomas's *Brady* claim as to the PIU inquiry's interviews of the investigators fails. Thomas admits that he was aware of the PIU inquiry before the start of his trial. [DE 1 at ¶¶ 38–39]. In fact, the interviews at issue occurred nearly a year before Thomas's trial. *Id.* As noted, a defendant may know the "essential facts" permitting him to take advantage of evidence even where he has no knowledge of the particular evidence at issue. *Todd*, 920 F.2d at 405. The Court must merely ask whether Thomas possessed enough facts to support a reasonable strategy at trial that could have brought the exculpatory evidence to light. *See Benge*, 474 F.3d at 243. Because Thomas was aware of the PIU inquiry more than a year before his trial, Thomas had ample time to seek materials from the inquiry. And because the interviews at issue occurred a year before Thomas's trial, the materials sought would have necessarily included the interviews. Put simply, "[i]f [Thomas's] counsel did not know the essential facts of [the interviews], he likely should have discovered them through further investigation." *See Abdur'Rahman v. Colson*, 649 F.3d 468, 476 (6th Cir. 2011). Thomas thus may not pursue a *Brady* claim as to the interviews of the investigators.

D.     **Fourteenth Amendment Substantive Due Process**

In Count 3 of his Complaint, Thomas asserts a Fourteenth Amendment substantive due process claim arising from the investigators' allegedly coercive conduct during his interrogation. [DE 1 at ¶¶ 65–69]. In response, Defendants argue that Thomas's claim is sufficiently covered by

the Fifth Amendment's prohibition against the use of coerced confessions at trial, and thus Thomas may not rely on the general notion of substantive due process. [DE 4-1 at 51].

In *United States v. Lanier*, the Supreme Court clarified that "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 520 U.S. 259, 272 n.7 (1997); *see also Kansas v. Ventris*, 556 U.S. 586, 590 (2009) ("The Fifth Amendment guarantees that no person shall be compelled to give evidence against himself, and so is violated whenever a truly coerced confession is introduced at trial, whether by way of impeachment or otherwise."); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (alteration omitted))).

Thomas maintains that his substantive due process claim is not covered by the Fifth Amendment. [DE 7 at 79–81]. Thomas differentiates between a challenge of the use of his confession at trial—which would be covered by the Fifth Amendment—and a challenge of the investigators' general use of alcohol and drugs to obtain evidence against him—which he asserts is not covered by the Fifth Amendment. *Id.* The Sixth Circuit has recognized a substantive due process claim alleging coercive police behavior. *See Smith v. Patterson*, 430 F. App'x 438, 441–42 (6th Cir. 2011). But in *Smith*, the plaintiff had not confessed to police, and thus the Fifth Amendment's prohibition of the use of coerced confessions at trial did not cover the plaintiff's claim. *See id.*; *see also Chavez v. Martinez*, 538 U.S. 760, 772–73 (2003) (finding that "the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-

Incrimination Clause" governs a claim addressing coercive police tactics where the allegedly coerced statements are not used at trial).

Thomas's allegedly coerced confession was used at trial. [DE 1 at ¶ 73]. Thus, the Fifth Amendment is the "specific constitutional provision" providing protection against the government behavior at issue. *See Lanier*, 520 U.S. at 272 n.7. In other words, because the government used Thomas's statements at his trial, the Fifth Amendment sufficiently addresses the allegedly coercive police tactics. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012) ("Here, Hall claims that the detectives coerced his confession and then used that confession to secure his conviction. Thus, the Fifth Amendment is the explicit constitutional provision that governs Hall's claim."). For these reasons, Thomas may not proceed with his substantive due process claim.

### E. Fifth Amendment Violation

In Count 4 of his Complaint, Thomas asserts a Fifth Amendment claim arising from the Commonwealth's use at trial of his allegedly coerced confession. [DE 1 at ¶¶ 70–74]. Defendants argue that Thomas's claim is barred by the applicable statute of limitations. [DE 4-1 at 51–52]. "In § 1983 suits, the applicable statute of limitations is determined by state law, while the 'date on which the statute of limitations begins to run . . . is a question of federal law.'" *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (alteration in original)). In Kentucky, § 1983 actions are governed by the one-year statute of limitations established in Ky. Rev. Stat. § 413.140(1). *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007).

The parties disagree as to when a Fifth Amendment claim under § 1983 accrues. Defendants argue that Thomas's claim arose "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred," as is the case for most § 1983 claims.

13

[DE 4-1 at 51–52 (citing *Desoto*, 489 F.3d at 233)]. Thomas contends that much like a malicious-prosecution claim, his Fifth Amendment claim did not accrue until his conviction no longer existed. [DE 7 at 81].

The Sixth Circuit has found that a Fifth Amendment–coercion claim accrues when the allegedly coerced statement is used at trial. *See Mettetal v. Vanderbilt Univ., Legal Dep't*, 147 F. App'x 577, 586 (6th Cir. 2005). At least one sister circuit has ruled similarly. *See O'Neill v. Burks*, 12 F. App'x 407, 409 (7th Cir. 2001) ("[The plaintiff's] claim accrued in the early 1990s when, he alleges, the defendants fraudulently obtained his confession, and the limitations period thus expired long ago."). Thomas's trial began on August 30, 2010 and concluded on September 2, 2010—over seven years before Thomas filed his Complaint with this Court. [DE 1 at ¶ 41]. As a result, Thomas may not proceed with his Fifth Amendment claim.

F.  **Remaining § 1983 Claims**

Thomas also asserts § 1983 claims against Louisville Metro, Bowman, Frederick, Meurer, and Ott arising from their supervisory roles. [DE 1 at ¶¶ 75–85]. Municipal and supervisory liability under § 1983 requires an underlying constitutional violation. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471 (6th Cir. 2006). As explained above, Thomas has failed to sufficiently allege an underlying violation—either because his claims fail as a matter of law or because they have not accrued. The Court will therefore dismiss without prejudice Thomas's remaining § 1983 claims.

G.  **State-Law Claims**

Finally, Thomas asserts several state-law claims against Defendants. [*See* DE 1 at ¶¶ 86–105]. But in his Response to Defendants' Motion to Dismiss, Thomas abandoned all state-law claims except his claim for malicious prosecution. [DE 7 at 82–83]. A malicious-prosecution

claim under Kentucky law accrues upon "a favorable termination of the criminal proceedings." *Dunn v. Felty*, 226 S.W.3d 68, 73 (Ky. 2007); *see also Cent. Acceptance Corp. v. Rachal*, 95 S.W.2d 777, 779 (Ky. 1936) ("[N]o cause of action for malicious prosecution can accrue until there has been a *final* termination of the action upon which the action for malicious prosecution is based." (emphasis added)). As explained above, the criminal proceeding against Thomas has not terminated. Thomas's state-law claim for malicious prosecution has thus not accrued, and the Court will dismiss the claim without prejudice.

## CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Defendants' Motion to Dismiss [DE 4] is **GRANTED**; and

(2) Thomas's federal and state-law claims for malicious prosecution, as well as his municipal and supervisory claims under § 1983, are **DISMISSED** without prejudice. Thomas's remaining claims are **DISMISSED** with prejudice.

This is a final and appealable order.

Cc: Counsel of record